IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 30, 2007

## STATE OF TENNESSEE v. WILLIAM SHANE BRIGHT

**Appeal from the Circuit Court for Bledsoe County**
**No. 64-2004     J. Curtis Smith, Judge**

———————————

**No. E2006-01906-CCA-R3-CD - Filed April 30, 2007**

———————————

The defendant was indicted for three counts of solicitation to commit first degree murder, committed while he was in prison for a previous, unrelated conviction. The defendant pled guilty to the three counts. As part of his plea agreement, he received three sentences of ten years each to be served concurrently. In a separate sentencing hearing, the trial court determined that the three concurrent sentences should be served consecutively to the sentence he was serving at the time the crimes were committed. The defendant appeals, arguing that he should have received concurrent sentences and that he was entitled to pre-trial jail credits for time served between the continuation of a parole hearing and his sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and J. CURWOOD WITT, JR., J., joined.

Philip A. Condra, District Public Defender and Robert G. Morgan, Assistant Public Defender, for the appellant, William Shane Bright.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; J. Michael Taylor, District Attorney General and James W. Pope, III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

While serving a sentence in the Department of Correction, the defendant told another inmate that he wanted to have his adoptive parents and adoptive brother killed by a hit man so that he could inherit their estates. The other inmate took two letters written by the defendant to internal affairs officers at the correctional facility. The first letter asked the hit man to kill his adoptive parents and adoptive brother, and the second letter stated the amount he was willing to pay to have this done.

The internal affairs officers spoke with the defendant, who initially denied an intent to kill his family but eventually confessed that he had written the letters with an intent to have his family members killed.

On July 24, 2006, the Bledsoe County Grand Jury indicted the defendant for three counts of solicitation to commit first degree murder. On February 1, 2006, the defendant pled guilty to all three counts. As part of his plea agreement, the defendant received three concurrent ten-year sentences for the convictions. On April 12, 2006, at a separate sentencing hearing, the trial court ran the three concurrent sentences consecutively to the defendant's existing sentence, which he was already serving in the Department of Correction. In addition, the trial court denied the defendant's request for pre-trial jail credit. The defendant filed a timely notice of appeal.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in ordering his three concurrent sentences to be served consecutively to his existing sentence and in denying his request for pre-trial jail credit. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

## Consecutive Sentencing

The defendant argues that the trial court incorrectly sentenced him to consecutive sentences. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. To that end, consecutive sentences may be ordered if the trial court determines by a preponderance of the evidence that:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person ...;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . .;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.


Tenn. Code Ann. § 40-35-115(b).


The decision to impose concurrent or consecutive sentences is a matter entrusted to the sound discretion of the trial court. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). Before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. See State v. Imfeld, 70 S.W.3d 698, 708-09 (Tenn. 2002); State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995).[1]

At the conclusion of the sentencing hearing, the trial court stated that the defendant's consecutive sentence would be based on the defendant's extensive criminal history, and that the defendant "is a dangerous offender, whose behavior indicates little or no regard for human life, and

---

[1] We note that the United States Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296 (2004), and Cunningham v. California 127 S.Ct. 856 (2007), which has called into question our supreme court's decision in State v. Gomez, 163 S.W.3d 632 (Tenn. 2005), do not affect our review of consecutive sentencing issues. Before our supreme court's decision in Gomez, it had specifically noted that Blakely did not impact our consecutive sentencing scheme. State v. Robinson, 146 S.W.3d 469, 499 n. 14 (Tenn. 2004). In addition, this Court has consistently found that Blakely does not affect consecutive sentencing determinations. See State v. Rose Marie Hernandez, No. M2003-01756-CCA-R3-CD, 2004 WL 2984844, at *4 (Tenn. Crim. App., Nashville, Dec. 16, 2004); State v. Earice Roberts, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at *15 (Tenn. Crim. App., Jackson, Nov. 23, 2004); State v. Lawrence Warren Pierce, No. M2003-01924-CCA-R3-CD, 2004 WL 2533794, at *16 (Tenn. Crim. App., Nashville, Nov. 9, 2004).

no hesitation about committing a crime in which the risk to human life is high . . . ." Tenn. Code Ann. § 40-35-115(b)(2), -115(b)(4). The trial court stated the following:

> That leaves us with the second and the third. Extensive criminal record or criminal activity is extensive. We don't have any proof of criminal activity other than convictions, so I'll address those.
>
> I am required to determine whether . . . consecutive sentences are reasonably related to the severity of the offense committed.
>
> (2) serve to protect the public from further criminal activity by the offender, and
> (3) are congruent with general principles of sentencing.
>
> Certainly, his record of criminal activity is extensive. The record is shown by the pre-sentence report and is not disputed.
>
> The next issue would be whether consecutive sentences are reasonably related to the severity of the offenses committed. That is the three for which he's plead [sic] guilty, and for which I'm conducting a sentencing hearing.
>
> Certainly, the solicitation for three murders is a severe offense. I believe that a consecutive sentence would reasonably relate to the severity of the offense. In fact, three offenses committed here. I also find, for obvious reasons, again, these are unprovoked, they're violent crimes. Serving a consecutive sentence would serve to protect the public from further criminal conduct, given these offenses and his record of criminal conduct in the past.
>
> So I find that the State has made out the consecutive category under dangerous offender.
>
> I also find that he's, as I've said, his record of criminal activity is extensive.
>
> As far as the general principals [sic] of sentencing, sentencing should be more severe under general principles, again, general principles of sentencing should be more severe for more severe violent offenses and for those who have extensive records, so certainly a consecutive sentence would be congruent with general principles of sentencing.

We conclude that the trial court did not abuse its discretion in ordering consecutive sentences. The trial court considered the applicable sentencing guidelines, and the record supports the trial

court's decision. The appellant does indeed have an extensive criminal history consisting of a multitude of prior convictions that are continuous from the time the defendant was eighteen through the time of sentencing, when he was twenty-nine. There was no dispute of his criminal history at the sentencing hearing. In addition, there is adequate support for consecutive sentencing based on the defendant being a dangerous offender. The trial court included findings that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. We agree with the trial court. The defendant pled guilty to soliciting to have his adoptive parents and brother murdered so that he would inherit their estates. As the trial court stated, these crimes were not provoked, and we would add that they are very calculating and callous. There is adequate support for the trial court's determination that the defendant has an extensive criminal history and is a dangerous offender for purposes of consecutive sentencing.

Therefore, this issue is without merit.

## Sentencing Credits

The defendant's final issue is that the trial court denied him sentencing credits toward the sentence at issue. At the time the defendant was indicted for the current offenses, the defendant was serving a sentence for unrelated offenses. Due to the convictions sub judice, the defendant's parole hearings for the sentence he was serving were continued. The Defendant argues that if his parole hearing had not been continued, and he had actually been on parole, he would have been able to post bond on the new offenses. Therefore, he states, he should be entitled to pretrial jail credits because the new charges were the basis of his detainer. The State argues that the defendant was in actuality serving time on his original sentence during the time period in question.

Tennessee Code Annotated section 40-23-101(c) states:

> The trial court shall, at the time the sentence is imposed and the defendant is committed to jail, the workhouse, or the state penitentiary for imprisonment, render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail . . . or county jail or workhouse, pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served in jail, workhouse or penitentiary subsequent to any conviction arising out of the original offense for which the defendant was tried.

Tenn. Code Ann. § 40-23-101(c) (emphasis added). Initially, we note that the primary purpose of awarding pre-trial jail credit is to prevent discrimination against indigent defendants who are unable to make bond prior to trial and appeal, unlike their counterparts with the financial means to obtain a bond. See State v. Watkins, 972 S.W.2d 703, 705 (Tenn. Crim. App. 1998); State v. Silva, 680

S.W.2d 485, 486 (Tenn. Crim. App. 1984); State v. Abernathy, 649 S.W.2d 285, 286 (Tenn. Crim. App. 1983). This purpose would not be served by giving the defendant pre-trial jail credit in this case. Here, the defendant was being held in prison for a sentence stemming from a previous conviction. Thus, even if the defendant had been able to post bond in this case for the solicitation to commit murder charges, he would not have been released until the expiration of his prior sentence. Furthermore, this Court has repeatedly held that Tennessee Code Annotated section 40-23-101(c) only provides for credit against a sentence if the reason for the incarceration arises from the offense for which the sentence was imposed. See Abernathy, 649 S.W.2d at 286; Majeed v. State, 621 S.W.2d 153, 155 (Tenn. Crim. App. 1981); Trigg v. State, 523 S.W.2d 375, 376 (Tenn. Crim. App. 1975).

The question now becomes whether the scheduling of a parole hearing leads to the conclusion that a defendant's sentence will be completed at the time of the parole hearing. At the sentencing hearing, the defendant's counsel stated that the defendant would have been eligible for parole at the continued parole hearing. Being eligible for parole and having already been granted parole are two entirely different situations. The defendant argues that but for these charges, he would have been granted parole; therefore, these charges resulted in his further incarceration. For the defendant to be successful, this Court would have to conclude that the Board of Parole would have granted the defendant's parole. However, we are not in a position to speculate what the Board's determination at this hearing would have been. Therefore, we conclude that the defendant's continued confinement due to his subsequent charges was not the direct result of these additional charges so as to bring the defendant within the ambit of T.C.A. § 40-23-101(c)

Therefore, this issue has no merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE